IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00803-CMA-NYW

CHARLES SCHWAB & CO., INC.,

　　Plaintiff,

v.

HIGHWATER WEALTH MANAGEMENT, LLC,

　　Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

　　This matter is before the court on Plaintiff Charles Schwab & Co., Inc.'s ("Plaintiff" or "Schwab") Motion to Dismiss (or "Motion"). [#23, filed June 2, 2017]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 31, 2017 [#6], the Case Reassignment dated April 3, 2017 [#8], and the Memorandum dated June 7, 2017 [#26]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and related briefing, the applicable case law, and the entire case file, I respectfully RECOMMEND that the Motion to Dismiss be DENIED for the reasons stated herein.

## BACKGROUND

　　Plaintiff initiated this action by filing its Complaint on March 30, 2017. [#1]. Plaintiff, a securities broker/dealer, entered into a custodial relationship—the Investment Manager Service Agreement ("IMSA")—with Highwater, a Registered Investment Advisory firm ("RIA"), wherein Highwater could offer its clients the option of having their assets custodied with

Schwab. [*Id.* at ¶¶ 6–9]. However, Plaintiff alleges that its former employee Gregory Giuffra resigned from Schwab and joined Highwater, and, in doing so, illicitly solicited business from Plaintiff's clients in violation of a non-solicitation agreement (the "Agreement") with Schwab. [#1]. Plaintiff alleges that Highwater was complicit in Mr. Giuffra's illicit acts and even encouraged them. [#1]. Accordingly, Plaintiff asserts the following claims against Defendant: (1) tortious interference with contract; (2) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*; (3) misappropriation of trade secrets pursuant to the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101 *et seq.*; (4) unfair competition; and (5) civil conspiracy. [#1]. Presently, Plaintiff and Mr. Giuffra are engaged in arbitration before the Financial Industry Regulatory Authority, Inc. (the "FINRA Action") that is set to commence in December 2017. [#3, #47]. Highwater is not a party to that proceeding. [#3].

On May 1, 2017, Highwater filed its Answer and asserted counterclaims for: (1) declaratory relief that the Agreement is a void agreement not to compete; and (2) tortious interference with contract and prospective financial advantage. [#16]. Highwater then filed its First Amended Counterclaims ("FAC"), amending its second counterclaim to tortious interference with prospective business relations ("Counterclaim II")—the subject of the instant Motion to Dismiss—on May 19, 2017. [#19].

As relevant here, the FAC alleges that, on June 2, 2016, Schwab informed Highwater that it was terminating the IMSA effective September 7, 2016—the same date Plaintiff would close Highwater's Investment Manager Master Account with Schwab. [*Id.* at ¶ 26]. The June 2 correspondence also informed Highwater that Plaintiff "would no longer accept and process any new account opening documentation for Highwater clients or accept or process documentation to

link existing Schwab accounts." [*Id.* at ¶ 28]. Schwab then informed Highwater's clients of the IMSA termination and provided Highwater's clients a list of modifications to their accounts, including new pricing guidelines. [*Id.* at ¶ 29]. Highwater alleges that Plaintiff sent the IMSA Termination Letter "to over 200 [Highwater] customers." [*Id.* at ¶ 30].

Highwater contends that Schwab "intentionally attempted to portray [it] in a negative light and create an appearance of impropriety by Highwater when Schwab sent the IMSA Termination Letters." [*Id.* at ¶ 46]. Highwater further alleges that Schwab employees made "false and disparaging statements regarding Highwater's products and business" to Highwater clients. [*Id.* at ¶ 47]. According to Highwater, Schwab intended to steer Highwater's clients away from continuing their business relationship with Highwater to instead conduct business with Schwab, and that Highwater had to make "concessions" to customers when their accounts were moved out of Schwab. [*Id.* at ¶¶ 49–59]. Moreover, Schwab initiated this action to recover from Highwater what it cannot recover from Mr. Giuffra in the FINRA Action—"a permanent restraint on any customer contact and an improper *de facto* extension of the restrictive covenants contained in the Agreement." [*Id.* at ¶ 25 (emphasis in original)].

On June 2, 2017, Schwab filed the instant Motion to Dismiss. [#23]. Plaintiff moves to dismiss Counterclaim II, because Highwater fails to allege that Schwab improperly interfered with a prospective business relationship or that Highwater suffered any damages as a result of any improper interference. [*Id.* at 7]. Highwater has filed a Response and Plaintiff a Reply. [#28; #29]. The Motion is now ripe for Recommendation.

## LEGAL STANDARD

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule

3

12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court may also consider materials outside the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).[1]

To survive a Rule 12(b)(6) motion, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Under Colorado law, to maintain a claim for tortious interference with prospective business relations ("tortious interference"), Highwater must allege that Schwab induced or caused a third party not to enter into or continue its business relation with Highwater, or prevented Highwater from acquiring or continuing the prospective relation. *See Harris Grp.,*

---

[1] Because Highwater attaches a copy of the IMSA Termination Letter to its FAC and Schwab attaches a copy of the IMSA to its Motion to Dismiss, this court considers both without converting the instant Motion to one for summary judgment.

*Inc. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. 2009) (quoting RESTATEMENT (SECOND) OF TORTS § 766). Highwater need not prove the existence of an underlying contract; rather, it must demonstrate "intentional and improper interference such that a particular contract is prevented from being formed." *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1060 (D. Colo. 2012) (citing *Id.* at 1195–96). "However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995); *see also Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1122 (10th Cir. 2008) (noting a plaintiff "must show that there was a reasonable likelihood that a contract would have resulted but for the wrongful interference.").

Here, Schwab moves to dismiss Counterclaim II because Highwater fails to allege any improper interference by Schwab that caused Highwater damages. First, regarding the IMSA Termination Letter, Schwab argues for dismissal because (1) Highwater provides only conclusory allegations that Schwab intended to "steer customers away from Highwater," as the IMSA Termination Letter contained no false statements about Highwater; (2) Schwab was contractually entitled to terminate the IMSA and cannot be liable for exercising its contractual rights; and (3) there are no allegations that the IMSA Termination Letter caused damages. *See* [#23 at 7–10; #29 at 3–4]. Second, as to the allegation that Schwab immediately terminated the processing of any new accounts for clients of Highwater, this allegation fails because it is conclusory, ignores the plain language of Schwab's rights under the IMSA, and fails to allege damages, i.e., this did not prevent Highwater clients from entering new contracts with *Highwater*. [#23 at 10–11]. Finally, as to any allegedly false statements Schwab made to Highwater's clients, Schwab argues that Highwater fails to allege how the one proffered false

statement ("that Highwater did not owe its customers a fiduciary duty") caused any damage to Highwater. [#23 at 11–12; #29 at 5]. Specifically, Schwab contends that there are no allegations that any customers terminated their relationship with Highwater or that prospective clients refused to do business with Highwater because of this statement. [#23 at 11; #29 at 6].

To start, the IMSA, on its face, includes a bilateral termination provision. *See* [#23-4 at 5 ("Either party may terminate this Agreement at any time by giving written notice to the other.")]. Consistent with the IMSA's termination provision, the IMSA Termination Letter states that Schwab is terminating the IMSA with Highwater effective September 7, 2016, and, that effective immediately, Schwab will "no longer accept and process new account opening documentation for [Highwater's] clients." [#19-1]. Accordingly, the termination, standing alone, does not constitute improper behavior. In *Caven v. American Federal Savings and Loan Association of Colorado*, a mortgagee ("American Federal") and mortgagor ("Mr. Caven") entered into a modification agreement whereby American Federal had the contractual right to approve any subsequent purchasers of Mr. Caven's property. 837 F.2d 427, 429–30 (10th Cir. 1988). Mr. Caven found two purchasers for his property and submitted them to American Federal. Subsequently, American Federal sought a substantial increase in the interest rate before it would approve the two purchasers. *Id.* at 429. Mr. Caven rebuffed the notion, and the subsequent purchasers withdrew from the purchase. *Id.* Following this withdrawal, Mr. Caven's broker, who stood to gain commissions on the sale of the property, filed a claim against American Federal for tortious interference with contractual relations, i.e., that American Federal's demand for an increased interest rate caused the broker to lose his commissions under his broker-contract with Mr. Caven. *Id.* The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that the broker's tortious interference with contractual relations claim failed as a matter of

law, because American Federal had the absolute right to insist on an increase in the interest rate under the terms of its loan agreement with Mr. Caven; thus, the broker could not prove that the American Federal's actions were improper. *Id.* at 432 (quoting *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 565 P.2d 952, 954 (Colo. App. 1977) (citation omitted)).

Similarly, the IMSA Termination Letter sent to Highwater's clients standing alone, or coupled with the IMSA Termination Letter to Highwater, does not adequately plead a tortious interference claim. Highwater does not argue that Schwab was not entitled to notify customers of the impending change of relationship [#28], and the correspondence itself provides facially neutral information. [#19-1 at 3–4]. Accordingly, I conclude that the IMSA Termination Letters [#19-1], standing alone, cannot form the basis of Counterclaim II, as each fails to demonstrate Schwab's improper interference. *See Caven*, 837 F.2d at 432; *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (noting, "in instances in which a plaintiff's tortious interference claims are based on lawful conduct or speech, [Colorado] courts have concluded that such lawful activity is insufficient to establish the required element of improper conduct.").

Nonetheless, the FAC contains several allegations concerning Schwab's conduct in addition to the IMSA Termination Letters to support its tortious interference counterclaim. For example, Highwater alleges that, after Schwab received notice that its clients were moving their assets to Highwater, Schwab "attempted to talk customers out of moving their accounts to Highwater by giving the customers knowingly false information, all with the motive of creating an unfair and unlawful competitive advantage[.]" [#19 at ¶ 52; #28 at 7]. Further, Highwater alleges that Schwab's employees "made false and disparaging statements regarding Highwater's products and business, for example telling customers that Highwater did not owe its customers a

7

fiduciary duty." [#19 at ¶ 47; #28 at 7–8]. Highwater then identifies at least one customer who did not continue its business with Highwater based on Schwab's misleading information. [*Id.* at ¶¶ 55–56]. Additionally, Highwater intimates that Schwab initiated this action to prohibit Highwater from conducting/soliciting business from former Schwab clients pursuant to the Agreement between Schwab and Mr. Giuffra. *See* [*id.* at ¶ 25].

Under Colorado law, it is "'not necessary that [the plaintiff] identify a specific customer relationship *or* a specific customer' with whom he or she had a prospective relationship." *Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 777 (10th Cir. 2008) (quoting *Ervin v. Amoco Oil Co.*, 885 P.2d 246, 254 (Colo. App. 1994) (emphasis added), *rev'd on other grounds*, 908 P.2d 493, 502 (Colo. 1995)). Again, Highwater need allege only that Schwab intentionally and improperly interfered with such relationships. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 502 (Colo. 1995).[2] This requires the court to analyze several factors, including but not limited to, "(i) the nature of the interfering conduct; (ii) the actor's motive; (iii) the relations between the parties; and (iv) the proximity of the conduct to the alleged interference." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1120 (D. Colo. 2010).

To be sure, Hightower's Counterclaim would benefit from further factual development and discovery may not be used as a "fishing expedition or an undirected rummaging for evidence of some unknown wrongdoing." *See Cuomo v. The Clearing House Ass'n, L.L.C.,* 557 U.S. 519,

---

[2] "However, a plaintiff may not sue a competitor, *qua* competitor, for intentional interference with a prospective business relation[,]" *id.*, unless the tortfeasor employs "wrongful means," as competitors have a privilege to compete with one another, including the inducing of third parties not to do business with their competitors, *see L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, Civil Action No. 10–cv–02868–MSK–KMT, 2013 WL 1231908, at *6 (D. Colo. Feb. 25, 2013) (defining "wrongful means" under Colorado law to include unfounded litigation). Here, there is no indication that Schwab and Highwater are competitors given that Highwater, as an RIA, cannot maintain custody of its clients' investments unlike Schwab a broker-dealer. *See* [#1 at ¶¶ 6, 8]. Thus, this court focuses on whether Highwater alleges that Schwab's conduct was improper.

8

531 (2009). But in considering Highwater's allegations in a light most favorable to it, and in accordance with above factors, I respectfully conclude that Highwater has sufficiently alleged Schwab's improper interference with Highwater's prospective business relationships to survive dismissal at this juncture. That is, Schwab attempted to steer Highwater's clients way from Highwater through false and disparaging comments about Highwater's products and services soon after Schwab terminated the IMSA. *See Perkins v. Fed. Fruit & Produce Co., Inc.*, 861 F. Supp. 2d 1285, 1291–92 (D. Colo. 2012) (holding the plaintiffs' allegations that the defendants' "negative and false remarks about the Plaintiffs" sufficient to state a tortious interference claim where the plaintiffs alleged that those statements "led to numerous employment rejections from prospective employers."). *See also* [#28 at 6 ("The essence of Highwater's tortious interference claim is that Schwab improperly interfered with potential customer relationships by providing false information to the customers about Highwater.")]. Highwater also identifies at least one client that refused to transfer its account to Highwater after having such a conversation with a Schwab employee. *See Tara Woods Ltd. P'ship*, 731 F. Supp. 2d at 1121 (holding sufficient to state a tortious interference claim the plaintiff's allegation that prospective buyers, which the court assumed to exist, were discouraged from extending offers based on the defendant's improper noticing of non-asbestos-related defaults). Additioanlly, Highwater alleges that Schwab initiated this action to prohibit Highwater from conducting further business with former Schwab clients in violation of the unenforceable Agreement between Mr. Giuffra and Schwab. *Cf. Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995) (explaining that a plaintiff may maintain a tortious interference claim against a competitor who employs "wrongful means," which "refers to conduct such as physical violence, fraud, *civil suits*, and criminal prosecutions." (emphasis added) (internal quotation marks and citations omitted)).

Thus, I respectfully RECOMMEND that Schwab's Motion to Dismiss be DENIED, and that Counterclaim II remain on the basis of Schwab's alleged conduct apart from the IMSA Termination Letters.[3]

**CONCLUSION**

Therefore, for the reasons stated herein, I respectfully **RECOMMEND** that:

(1) Plaintiff Charles Schwab & Co., Inc's Motion to Dismiss [#23] be **DENIED**.[4]

DATED: September 14, 2017   BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge

---

[3] For this reason, this court does not consider Highwater's request to amend its FAC contained in its Response. *See* [#28 at 9]. I note, however, that such a request must be made by a formal motion, *see* D.C.COLO.LCivR 7.1(d), and that in the absence of the proposed second amended counterclaims, this court cannot determine whether leave to amend is warranted, *see Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (upholding denial of leave to amend where the party failed to file a motion explaining the bases for any proposed amendment but merely included one line in a brief suggesting the possibility of amendment).

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).