## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00803-CMA-NYW

CHARLES SCHWAB & CO., INC.,

     Plaintiff,

v.

HIGHWATER WEALTH MANAGEMENT, LLC,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on two related motions:

     (1)    Defendant Highwater Wealth Management, LLC's ("Highwater") Motion to Quash Subpoena ("Motion to Quash") [#39, filed August 14, 2017]; and

     (2)    Non-Party Gregory Giuffra's "Limited Special Appearance to Quash Subpoena Duces Tecum" ("Motion to Quash") [#57, filed September 12, 2017].[1]

     The undersigned considers the Motions to Quash pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 31, 2017 [#6], the Case Reassignment dated April 3, 2017 [#8], and the Memoranda dated August 14, 2017 [#40] and September 13, 2017 [#60]. This court has determined that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motions and related briefing, the applicable case law,

---

[1] Because Mr. Giuffra's motion incorporates by reference Highwater's Motion to Quash in its entirety and Plaintiff Charles Schwab & Co., Inc. incorporates by reference its Response to Highwater's Motion to Quash in response to Mr. Giuffra's motion, this court refers primarily to Highwater's Motion to Quash [#39] in addressing Highwater and Mr. Guiffra's objections.

and the entire case file, this court DENIES Highwater's Motion to Quash and GRANTS IN PART and DENIES IN PART Mr. Giuffra's Motion to Quash for the reasons stated herein.

## BACKGROUND

This court has discussed the background of this case in several prior orders, *see, e.g.*, [#41; #61], and does so here only as it pertains to the Motions to Quash. Plaintiff Charles Schwab & Co., Inc. ("Plaintiff" or "Schwab") initiated this action by filing its Complaint on March 30, 2017. [#1]. Plaintiff alleges that its former employee Gregory Giuffra resigned from Schwab and joined Highwater, and, in doing so, illicitly solicited business from Plaintiff's clients in violation of a non-solicitation agreement (the "Agreement") with Schwab. [#1]. Plaintiff alleges that Highwater was complicit in Mr. Giuffra's illicit acts and even encouraged them. [#1]. In addition to asserting claims directly against Highwater in this action, Plaintiff and Mr. Giuffra are engaged in arbitration before the Financial Industry Regulatory Authority, Inc. (the "FINRA Action") that is set to commence in December 2017. [#3, #47]. Highwater is not a party to that proceeding. [#3].

On May 1, 2017, Highwater filed its Answer and asserted counterclaims for: (1) declaratory relief that the Agreement is a void agreement not to compete; and (2) tortious interference with contract and prospective financial advantage. [#16]. Highwater then filed its First Amended Counterclaims ("FAC"), amending its second counterclaim to tortious interference with prospective business relations ("tortious interference") on May 19, 2017. [#19]. Plaintiff filed a Motion to Dismiss Highwater's tortious interference counterclaim, which the undersigned recommended denying. *See* [#23; #61]. The court also entered a Scheduling Order in this matter, based in part, upon stipulations by the Parties. [#20; #22]. To that end, the Parties stipulated, and this court approved the following statement:

Schwab is currently involved in a FINRA arbitration with Greg Giuffra. Subject to a protective order to be submitted to the Court for its approval and entry in this civil action, and pursuant to written consent from Giuffra, the parties agree to utilize the discovery conducted (or to be conducted) in the arbitration in an effort to avoid unnecessarily duplicating those efforts. The parties agree to take all other reasonable steps to reduce discovery and related costs, and agree to use a unified exhibit numbering system for exhibits where possible.

[#22 at 8].

The Parties proceeded through the Arbitration. On July 27, 2017, Schwab served Mr. Giuffra with a subpoena duces tecum (the "Subpoena"), requesting information regarding Mr. Giuffra's communications with Schwab's "Customers." [#39-1 at 6]. Specifically, Plaintiff sought five (5) categories of documents:

1. All invoices or billing records reflecting calls and/or text messages made or sent to and from [Mr. Giuffra's] Cell Phones [ending in 6651 or 9509].

2. All Documents containing the name, contact information, personal, or financial information of a Customer[2] in any form, specifically including electronically stored information. This request does not seek Documents Concerning a Customer created after the execution of a [limited power of attorney] or other form by the Customer authorizing (i) [Mr.] Giuffra or Highwater to service the Customer or (ii) the transfer of his/her/its assets from Schwab to be serviced by [Mr.] Giuffra at Highwater.

3. All Documents, not previously produced in the Arbitration, Concerning or reflecting a Communication or meeting between [Mr.] Giuffra, and a Customer, including but not limited to all text messages. This request does not seek Documents Concerning a Customer created after the execution of an [limited power of attorney] or other form by the Customer authorizing (i) [Mr.] Giuffra or Highwater to service the Customer or (ii) the transfer of his/her/its assets from Schwab to be serviced by [Mr.] Giuffra at Highwater.

4. All documents Concerning or reflecting a Communication or meeting between [Mr.] Giuffra and a Customer Concerning the Arbitration or Civil Action.

5. Produce for inspection and forensic imagining the Cell Phones.

---

[2] The Subpoena defined "Customer" as "the clients and accounts serviced by Guiffra during his employment at Schwab, or whose names became known to Giuffra, during his employment at Schwab. [#39-1 at 6].

Initially, Highwater moved to quash the Subpoena because Schwab seeks duplicative discovery as that sought in the FINRA Action, as well as information from Mr. Giuffra's cell phones that infringe on his rights to privacy and implicate the attorney-client privilege. [#39]. This court discussed Highwater's Motion to Quash during a Telephonic Status Conference held on September 5, 2017, which this court specifically requested that Highwater address the issue of standing in its Reply. Mr. Guiffra then made a "special appearance" to quash the Subpoena on September 12, 2017. [#57]. Schwab counters that the Subpoena is not unduly burdensome or duplicative, and specifically clarified that it was only seeking "new documents not previously produced or old documents not previously produced." [#46 at 2]. Schwab also argues that Highwater lacks standing to challenge the Subpoena on non-privilege grounds. [*Id.* at 7–9]. Schwab further contends that the Subpoena does not invade Mr. Giuffra's privacy interests, given the entered Stipulated Protective Order in this matter. [*Id.* at 9–10]. Because the Motions to Quash are ripe, this court turns to the Parties' arguments below.

**LEGAL STANDARDS**

I.      **Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of discovery." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R .Civ. P. 26(b)(1). Generally, when discovery appears to be relevant on its face, the responding party bears the burden of establishing that the requested discovery does not come within the scope of relevant evidence, or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted). But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial, rebuttal showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007).

The court may also consider the fact that the discovery sought is directed at a nonparty, and in such a case, the ordinary burden imposed under Rule 26 is generally greater. *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998). In this case, however, the court finds that imposing a heavier burden is not appropriate, because while technically a non-party, Mr. Guiffra's actions are central to both the claims and counterclaims and the Parties had an opportunity to proceed in one forum against both Highwater and Mr. Guiffra, but declined to do so.

## II.     Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. U.S.*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a subpoena is bounded by the same standards that govern discovery between the parties – to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses, and are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In addition, discovery conducted pursuant to a Rule 45 subpoena must be concluded by the deadline specified in the court's Scheduling Order. *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001); *Rice*, 164 F.R.D. at 558.

On a timely motion, the court must quash or modify a subpoena that, *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). Generally, "a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought[,]" or "upon a showing that there is a privacy interest applicable." *Windsor v.*

*Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted) ("[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum"). "Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena." *Cobbler Nevada, LLC v. Does*, No. 15-CV-02771-WYD-MEH, 2016 WL 300827, at *1 (D. Colo. Jan. 25, 2016) (citations omitted).

**ANALYSIS**

**I.      Standing**

Highwater argues, and Mr. Giuffra agrees, that it has standing to quash the Subpoena, because "it has a personal interest in the information demanded" in that it does not wish to subject one of its employees to "potential embarrassment, harassment, or humiliation." [#39 at 9]. Further, Highwater contends that the Subpoena implicates Mr. Giuffra's privacy rights as well as information protected by the attorney-client privilege. [*Id.* at 7–10]. Schwab responds that Highwater has no standing to attack the Subpoena for being unduly burdensome. [#46 at 7].[3] In its Reply, Highwater reasserts its contention that it has standing, because Mr. Giuffra's cell phone records may reveal "confidential communications between Giuffra and Highwater" and communications between Mr. Giuffra, Highwater, and their counsel. [#50 at 4].

To the extent it asserts that the Subpoena seeks information that *Highwater* has a privacy interest in or that may implicate *its own* attorney-client privilege, Highwater has standing to move the quash the Subpoena. *See Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993) (holding that non-parties had standing to challenge the plaintiff's subpoena given that the non-parties asserted they had a privacy interest in or some other privilege to the information sought). But Highwater lacks standing to challenge the Subpoena on

---

[3] Schwab appears to concede that Highwater has standing to challenge the subpoena on privilege grounds. This court agrees. *See United States v. Tucker*, 249 F.R.D. 58, 60 n. 3 (S.D.N.Y. 2008).

grounds that it is unduly burdensome and not proportional to the needs of the case. *See Dallas Buyers Club, LLC v. John Does 1-20*, No. 14-CV-02481-WYD-MEH, 2014 WL 5326460, at *2 (D. Colo. Oct. 17, 2014) ("Thus, even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." (citations omitted)).

With these principles in mind, this court considers the Subpoena topics. Arguably, the way each is drafted could implicate confidential information belonging to Highwater, and could implicate information protected by a joint defense privilege. *Static Control Components, Inc. v. Lexmark In'l, Inc.*, 250 F.R.D. 575, 578 n.2 (D. Colo. 2007) (recognizing that federal courts have used the term "joint defense privilege" to refer to when clients share the same attorney). But Highwater has failed to persuade this court that any of its arguments regarding burden or the "risk of creating an unhappy workplace and bitterness between Giuffra and Highwater" [#39 at 10] are sufficient to confer standing on Highwater. Nor does Mr. Guiffra's argument that Highwater has standing to quash a subpoena directed to him because the information requested in the subpoena is based on his employment with Highwater confer standing. [#57 at 1]. Because Mr. Guiffra has now intervened for the limited purpose of moving to quash the Subpoena, and because he has adopted the arguments initially made by Highwater [#57], this court finds that the better course of action is to DENY Highwater's Motion to Quash for lack of standing, and proceed to consider the issues raised in the context of Mr. Guiffra's separate Motion to Quash. [*Id.*].

## II. Privilege

Mr. Guiffra contends that the entire subpoena should be quashed because it "implicates information protected by the attorney-client privilege to the extent the search involves text

messages and phone calls between Giuffra and his attorneys." [#39 at 9; #57]. To the extent that

Plaintiff seeks access to an unreviewed image of Mr. Guiffra's mobile telephones as part of

Topic 5, this court agrees. But otherwise, Mr. Guiffra (and Highwater) have failed to establish

that the privileged communications are of such volume that they can object to the production of,

and withhold, them in a manner that is consistent with the obligations under Rule 45(e)(2)(A).

## III.    Undue Burden

Pursuant to Rule 45(d)(3)(iv), a court may quash a subpoena that subjects a person to

undue burden. Fed. R. Civ. P. 45(d)(3)(iv). This court's review of the Topics indicates that they

seek information relevant to the claims asserted by Schwab against Highwater. [#1]. Therefore,

Mr. Giuffra bears the burden of demonstrating with sufficient detail or "a compelling showing"

that the Subpoena requests are unduly burdensome. *See Int'l Bhd. Of Teamsters, Airline Div. v.*

*Frontier Airlines, Inc.*, No. 11-cv-02007-MSK-KLM, 2012 WL 1801979, at *7 (D. Colo. May

16, 2012); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-cv-01611-

MSK-CBS, 2014 WL 1257762, at *6 (D. Colo. Mar. 27, 2014) (collecting cases).

Mr. Giuffra, through adopting Highwater's Motion, argues that the Subpoena is

duplicative of the information Plaintiff sought in the FINRA Action, specifically Topics 1–4,

which are identical to requests in the FINRA Action. [#39 at 5–6; #50 at 7]. Further, that

Schwab's requests are unlimited in time and scope, and seek information that is irrelevant to the

present action. [#39 at 5–6, 7]. Additionally, Schwab could more easily obtain information

regarding Mr. Giuffra's communications with Schwab customers from the customers themselves.

[*Id.* at 8]. Schwab responds that it only seeks information not produced in the FINRA Action,

information Schwab contends Mr. Giuffra spoiled, concealed, or withheld. *See* [#46 at 7–8; #46-

2 at 2]. Moreover, obtaining this information from Schwab's customers would require the

issuance of hundreds of subpoenas to non-parties that Mr. Giuffra worked with while employed by Schwab. [#46 at 9].

### A. Topics 1 and 4

To start, Topic 1 is overly broad on its face, and a majority of the information produced will undoubtedly be irrelevant to this matter. *See E.E.O.C. v. Unit Drilling Co.*, No. 13-cv-147-TCK-PJC, 2014 WL 130551, at *3–4 (N.D. Okla. Jan. 13, 2014) (quashing overly broad requests that sought "any and all documents" concerning a wide swath of personal information). This request does not limit itself to any temporal range, nor does it limit the scope of information requested to Customers as defined by the Subpoena—it is conceivable that much of this information will not pertain to Mr. Giuffra's communications with Schwab's customers but, rather, to Mr. Giuffra's personal life. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008) (explaining that the moving party bears the burden of establishing the relevance of the information sought when its relevance is not apparent on its face). Accordingly, this court agrees with Mr. Giuffra that Topic 1 is unduly burdensome because it is overboard and irrelevant. *See Richards v. Convergys Corp.*, Nos. 2:05-cv-00790-DAK, 2:05-cv-00812 DAK, 2007 WL 474012, at *4–5 (D. Utah Feb. 7, 2007) (quashing subpoenas that sought "all documents regarding Richard's employment."); *White v. Deere & Co.*, No. 13-cv-02173-PAB-NYW, 2015 WL 1385210, at *9 (D. Colo. Mar. 23, 2015) ("Discovery into matters not relevant to the case imposes a *per se* undue burden.").

To the extent that Mr. Guiffra, however, has "unilaterally decided to redact all calls, even with Schwab Customers, unless those Customers eventually transferred to Highwater," [#46 at 4], this court finds that Mr. Guiffra should produce such documents. Schwab has asserted a claim for misappropriation of trade secrets under both federal and state law against Highwater,

and has averred that its confidential information includes "clients' identities, names, and addresses." [#1 at 15–16]. Mr. Guiffra is alleged to have provided such information to Highwater. The invoices or billing records reflecting calls and/or text messages made or sent to and from Mr. Guiffra's cell phones arguably reflect Schwab clients whose identities, names, or addresses should not have been disclosed to Highwater, regardless of whether they ultimately moved their business from Schwab to Highwater. It is unclear if any of these documents remain outstanding given the FINRA Order attached as [#46-1]. If Mr. Guiffra has responsive documents that have yet to be produced in the FINRA Arbitration, those documents should be produced no later than **October 11, 2017**.

   **B.    Topic 4**

   This court reaches a similar conclusion as to Topic 4, which seeks all documents "concerning or reflecting" communications between Mr. Giuffra and Schwab's customers concerning this action or the FINRA Action. [#39-1 at 8]. Mr. Giuffra argues that he already produced this information in the FINRA Action. *See* [#39 at 6 (citing [#39-3 at 7])]. Courts may quash a subpoena when the "discovery sought is unreasonably cumulative or duplicative." *See Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *2–3 (N.D. Ill. Dec. 14, 2012) (internal quotation marks and citation omitted). Thus, to the extent Schwab seeks information that Mr. Giuffra produced in the FINRA Action, this court agrees that Mr. Giuffra need not supply that same information. But to the extent Schwab seeks information not produced in the FINRA Action, this court finds no basis to preclude its discovery in this action. As above, Mr. Giuffra shall produce responsive documents no later than **October 11, 2017**.

## C. Topics 2 and 3

As to Topics 2 and 3, this court agrees with Schwab that Mr. Giuffra fails to demonstrate that the Subpoena Topics, as drafted, impose an undue burden on him to produce documents so long as the documents were not already produced in the FINRA Action. *See Biological Processors of Alabama, Inc. v. North Georgia Envtl. Servs., Inc.*, 2009 WL 1663102, at *1 (E.D. La. Jun. 11, 2009) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity"); *Ohio Valley Envtl. Coal., Inc. v. United States Army Corps of Eng'rs*, No. 1:11MC35, 2012 WL 112325, at *2 (N.D.W. Va. Jan. 12, 2012) ("[T]he party claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual manner and extent of the burden and the injurious consequences of insisting compliance with the subpoena." (internal quotation marks and citation omitted)).

While Mr. Guiffra (and Highwater) argue that these topics implicate their confidential information, such concerns are not sufficient to justify the quashing of the Subpoena. "The issue of whether the information sought is confidential commercial information is separate and distinct from the issue of whether its disclosure will cause undue burden or harm." *DISH Network, L.L.C. v. WNET*, No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *4 (D. Colo. Apr. 24, 2014). In this case, the nature of the allegations makes Mr. Guiffra's communications and meetings with Customers during his time as a Highwater employee relevant and not unduly burdensome. Any confidentiality concerns should be alleviated by designation under the entered Stipulated Protective Order.[4]

---

[4] Though Highwater argues that the Subpoena may seek information protected by the attorney-client privilege, neither Highwater nor Mr. Giuffra provide specifics on the matter other than to say that there "have been a number of communications between Giuffra and his counsel through

**D.    Topic 5**

Finally, this court turns to Topic 5, which seeks the forensic imaging of Mr. Giuffra's cell phones. This court perceives this Topic to garner the most vigorous objection, and presents the most significant issue from the perspective of overbreadth, privacy, and privilege. Schwab contends that any concerns regarding Mr. Guiffra's personal and private information can be ameliorated through an inspection protocol or designation under the Stipulated Protective Order. [#46 at 9–10]. In so arguing, Schwab fails to address the core issue of relevance and overbreadth – that a complete image of Mr. Guiffra's mobile phones necessarily will capture information that is not relevant *at all* to this action. *Richards*, 2007 WL 474012, at \*4–5 (quashing subpoenas that sought "all documents regarding Richard's employment."); *White*, 2015 WL 1385210, at \*9 ("Discovery into matters not relevant to the case imposes a *per se* undue burden."). Schwab's proposal that a forensic expert can conduct a search for relevant materials does not cure the issue in the eyes of the court, because Schwab has not identified any contours of a protocol, particularly what will constitute a "search for relevant materials." Nor is there anything in the record that suggests the Parties can agree to such a protocol.

In *Syposs v. United States*, the plaintiff in a Federal Tort Claims Act for medical malpractice sought to subpoena the cell phone records of a non-party doctor. 181 F.R.D. 224, 226 (W.D.N.Y. 1998). The plaintiff argued that the non-party doctor had no privacy interests in a cellular telephone call or the numbers recorded by the telephone company. *Id.* at 227. The court disagreed. Rather, the court held that confidential information, even if no privacy interest exists in the constitutional sense, may be "entitled to protection against unwarranted public disclosure resulting from discovery in federal civil litigation." *Id.* Thus, the non-party doctor

---

his cell phone." [#39 at 9]. As discussed above, this alone is insufficient to quash the subpoena. *See Windsor*, 175 F.R.D. at 668.

had a reasonable expectation of privacy in his cellphone records. *Id.* Despite this court's observation that Mr. Guiffra is not the typical non-party to this action, this reasoning equally applies here as to the forensic inspecting and imaging of Mr. Guiffra's cell phones. Thus, this court concludes that Topic 5 is overbroad on its face.

While Schwab accuses Mr. Giuffra of spoliating and/or withholding certain discovery in the FINRA Action, such a showing has not been made before this court. Nor is this court persuaded that Schwab could not have crafted a more narrow Topic, or used other discovery, to seek the allegedly missing text messages [#46 at 3-4]; the names and numbers for "dozens of customers," [*id.* at 4 (emphasis in original)]; or other information that allegedly resides on Mr. Guiffra's mobile telephones. While this court may, in its discretion, narrow or modify overly broad discovery requests it is not required to do so, and will not do so here. *See Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (4th Cir. 1994); *cf. United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."). Unlike Topics 1 and 4, Topic 5 is not well-suited for modification by the court. Accordingly, the Subpoena is quashed as to Topic 5.

## CONCLUSION

Therefore, for the reasons stated herein, **IT IS ORDERED** that:

(1) Highwater's Motion to Quash [#39] is **DENIED**;

(2) Mr. Giuffra's Motion to Quash [#57] is **GRANTED** with respect to Topic 5, **LIMITED** as to Topics 1, 2, 3, and 4, and otherwise **DENIED**; and

(3) Because discovery closed in this matter on September 1, 2017, it is re-opened up to and including **October 11, 2017**, for the limited purpose of allowing Mr. Giuffra to produce the responsive documents, if appropriate.

DATED: September 27, 2017                    BY THE COURT:


                                             s/Nina Y. Wang_____
                                             Nina Y. Wang
                                             United States Magistrate Judge